UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MICHAEL MOSS, ET AL                    CIVIL ACTION NO. 16-cv-1435

VERSUS                                 CHIEF JUDGE HICKS

WOLF PETROLEUM SERVICES, LLC           MAGISTRATE JUDGE HORNSBY

# MEMORANDUM ORDER

## Introduction

Michael Moss and Korry Moss ("Plaintiffs") worked in North Dakota as rig operators for Wolf Petroleum Services, LLC, a Minden-based company that has provided well services in a number of states. Plaintiffs allege that Wolf violated the Fair Labor Standards Act ("FLSA") by not paying them and similarly situated employees overtime pay. Plaintiffs filed suit against Wolf and company president Marc Meitner on behalf of themselves and all other similarly situated employees across the country.

Before the court is Plaintiffs' Motion for Conditional Certification (Doc. 23) that requests certification as a collective action and authority to issue notice to the other employees and afford them an opportunity to opt in to this suit. For the reasons that follow, the motion is granted, but the group of eligible employees is limited to those who worked in North Dakota in the three years prior to the court's approval of notice.

## FLSA and Similarly Situated Employees

The FLSA provides that a person may maintain an action on "behalf of himself ... and other employees similarly situated." 29 U.S.C. § 216(b). However, "[n]o employee

shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id. The latter provision distinguishes an FLSA collective action from a Rule 23 class action. Prospective FLSA claimants, even if within the scope of employees who are similarly situated, must affirmatively opt-in to be bound by the action.

The Fifth Circuit has not set a legal standard for collective-action certification. Portillo v. Permanent Workers, L.L.C., 662 Fed. Appx. 277, 279 (5th Cir. 2016). One of the common approaches is known as the Lusardi approach, as first described in Lusardi v. Xerox Corp., 122 F.3d 463 (D. N.J. 1988). A district court that applied Lusardi was affirmed in Mooney v. Aramco Services Co., 54 F.3d 1207 (5th Cir. 1995), although the Fifth Circuit made clear that it was not endorsing the methodology and did not sanction any particular methodology. 54 F.3d at 1216.

Most district courts in the Fifth Circuit now use the Lusardi approach. See, e.g., Brown v. Body & Soul Servs., Inc., 2017 WL 2198192, *1 (W.D. La. 2017) (Hayes, M.J.); Jones v. Colonial Nursing Home, Inc., 2017 WL 3175926 (W.D. La. 2017) (Perez-Montes, M.J.); and Salinas v. Wood Grp. PSN Commissioning Servs., Inc., 2017 WL 6596619 (S.D. Tex. 2017) ("district courts in the Fifth Circuit usually proceed under the Lusardi approach"). This division has done so as well in cases such as Autry v. City of Shreveport, 02 CV 2428 and Updite v. Delta Beverage, 06 cv 0593. It is flexible and practical, and it will be followed in this case.

The first step under Lusardi is the notice stage. The plaintiffs file a motion for conditional certification. The district court makes a decision, usually based only on the pleadings and any affidavits that have been submitted, whether notice of the action should be given to potential plaintiffs. The determination is made using a fairly lenient standard. Courts usually require nothing more than substantial allegations that the original and putative plaintiffs were together the victims of a single decision, policy or plan. Mooney, 54 F.3d at 1213-14; Portillo, 662 Fed. Appx. at 280.

The second step, if it occurs, is not reached until discovery is largely completed. The defendant may file a motion for decertification. The parties, aided by discovery, will be able to provide the court much more information about the claims and employees, and the court will make a factual determination on the similarly situated question. If the claimants are found to be similarly situated, the district court will allow the collective action to proceed to trial. If the claimants are not similarly situated, the district court will decertify the action, and the opt-in plaintiffs will be dismissed without prejudice. The original plaintiffs will proceed to trial on their individual claims. Mooney, 54 F.3d at 1214; Portillo, 662 Fed. Appx. at 280-281.

**Relevant Facts**

Plaintiffs worked at the North Dakota location, but they ask the court to give notice to all employees with similar jobs at several other locations. The principal disagreement between the parties with respect to the notice stage is the geographic scope of the

employees to be notified. Wolf argues that Plaintiffs have presented enough facts to justify notice to only their former co-workers in the North Dakota location.

Plaintiffs alleges in the first amended complaint that they worked for Wolf and Mr. Meitner as "rig-operators" in North Dakota. Doc. 4, ¶¶ 5 and 6. Plaintiffs allege that Wolf employed them and similarly situated employees to maintain and service customer wells. Wolf provided a variety of services, including chemical sales, torque and testing, well swabbing, pump truck services, hydrostatic testing, batch treatment, and other well services. The service areas were northwest Louisiana, east Texas, south Texas, west Texas, North Dakota, Pennsylvania, West Virginia, Alaska, and Iraq. ¶ 11. Plaintiffs allege that rig workers performed various well servicing activities, such as maintaining the wells and bailing water off the top of the wells. ¶ 12.

Plaintiffs allege that they regularly worked in excess of 40 hours, sometimes 70 hours or more per work week, but Wolf paid them only a flat rate or salary. Plaintiffs allege that this deprived them of overtime pay to which they were entitled under the FLSA. This allegedly continued for many months, but Defendants eventually began paying employees an hourly rate. ¶¶ 12-17.

The first amended complaint lists as a party the class of current and former rig workers, including rig operators and rig hands, who were employed by Defendants during the three years preceding the filing of the complaint. ¶ 7. (The three-year period reflects the period of limitations for a willful violation). The complaint does not provide much information about other employees or how they were paid. All Plaintiffs muster is, "Upon

information and belief, Defendants employ other rig workers similarly situated to Plaintiffs to maintain and service the wells." ¶ 11. They also allege, "Upon information and belief, Defendants paid all its rig workers pursuant to the same illegal practice and/or policy." ¶ 16.

Under the heading Collective Action Allegations, Plaintiffs allege that they are aware the policies and practices they describe have been imposed upon other rig workers throughout the United States. They seek to define the similarly situated employees as: "All current and former rig workers who were employed by Defendants during the three-year period preceding the filing of the Original Complaint." ¶¶ 21-26.

Each Plaintiff also filed a declaration pursuant to 28 U.S.C. § 1746 in support of the Motion for Certification. Korry Moss states that he worked for Wolf as a rig worker from April 2014 through September 2015. Michael Moss says that he did the same from July 2014 through October 2015. Each man describes his former work in essentially the same terms quoted from the complaint and repeats the claim that he often worked in excess of 70 hours without overtime compensation for hours in excess of 40 hours per week.

With respect to other employees, each man states, "Defendants employed many other individuals as salaried rig workers." The other rig workers are said to have had similar job duties and responsibilities. Each man states that he has "personal knowledge that other rig workers were paid like I was" in that they were paid a flat rate regardless of the number of hours worked in a week. The statements provide no factual explanation for

that knowledge or whether it applies to any employees beyond the North Dakota area where Plaintiffs worked.

Defendants' opposition to the motion is supported by an affidavit from Marc Meitner, who testifies that he and two other men started Wolf in north Louisiana in 2009. It is an oil and gas service company that provides its customers manpower paired with equipment to perform various tasks. Operations began in north Louisiana and then expanded to North Dakota, west Texas, West Virginia, and Pennsylvania.

Mr. Mietner describes how the work of employees varies depending on location. Employees in Louisiana perform various services, which swabbing accounts for about 30%. North Dakota employees, on the other hand, performed only swabbing services. The operations in west Texas had very few swab jobs; the focus there was on torqueing and testing, and the same was true in West Virginia. Mietner says that none of Wolf's employees are identified as "rig workers."

Mr. Mietner testifies that Wolf today employs only 8 to 10 people, but it had a total of 79 employees between October 2013 and August 2017. Employees hired to work in North Dakota had a different pay structure because Wolf had to provide greater financial incentive to get employees to work in the harsh climate. The North Dakota employees were paid a job bonus of approximately $100 per day if, for example, a job was completed successfully or an invoice was paid. Mietner does not explain how, other than the bonus, its method of compensation differed for employees elsewhere in the country.

Mr. Mietner testifies that Wolf's only current operation is in north Louisiana, but between October 2013 and now, Wolf employed a nationwide total of 17 swab operators and 46 swab hands, pump operators, pump hands, shop hands, or office managers. During that same time, it employed in North Dakota approximately 13 swab operators, 15 swab hands, and an office helper. He also states that the company paid out almost $300,000 in overtime to employees at the North Dakota operation, plus more than a $100,000 in overtime to employees in other locations. North Dakota employees also received about $150,000 in bonuses. Mr. Mietner does not explain whether, other than bonus payments, the various employees, by whatever title he gives them, were paid by any means different than that described in the complaint.

**Geographic Scope of Notice**

Courts have held that employees must only be similarly, not identically, situated to proceed collectively. Falcon v. Starbucks Corp., 580 F. Supp. 2d 528, 534 (S.D. Tex. 2008). And having different job titles or slightly different duties does not mean employees are not similarly situated. Ashcraft v. Core Labs., LP, 2016 WL 3258369, *4 (S.D. Tex. 2016). "Geographic commonality is not necessary to meet the 'similarly situated' requirement for a FLSA collective action; instead the focus is on whether the employees were impacted by a common policy." Prejean v. O'Brien's Response Mgmt., Inc., 2013 WL 5960674, *7 (E.D. La. 2013), quoting Heeg v. Adams Harris, Inc., 907 F.Supp.2d 856, 863 (S.D. Tex. 2012). But courts have limited notice to the location or department where the named plaintiff worked when there was an insufficient showing that the challenged policy was in

place at the other locations. Ross v. Sw. Louisiana Hosp. Ass'n, 2013 WL 1818331, *3 (W.D. La. 2013). "FLSA violations at one of a company's multiple locations generally are not, without more, sufficient to support company-wide notice." Rueda v. Tecon Servs., Inc., 2011 WL 2566072, *4 (S.D. Tex. 2011).

The standard at the notice stage is lenient, but it is nonetheless a standard that must be met with some substantial allegations or evidence. Plaintiffs have made an adequate showing that all employees in the North Dakota operations, no matter their title or job designation, were similarly situated to Plaintiffs in that they had similar jobs and were paid based on the same rules. Plaintiffs have not, however, mustered more than a hunch that the employees at the other locations were paid based on a similar policy.

The court is not persuaded by Wolf's attempts to separate the employees by their job titles and whether they could earn bonuses, but notice to the far flung employees in other states is not merited based on the mere "upon information and belief" allegation in the petition and the unexplained assertion of personal knowledge in the affidavits that those employees were paid based on a similar policy. Plaintiffs testify that they have personal knowledge that the other employees were paid in a similar manner, but they do not provide any *facts* to support that conclusory assertion. How do they know? Did they speak to other employees? Have they seen documentation? Did they hear gossip in the workplace? It is unknown. Such generic and conclusory assertions of a common policy are not adequate to justify notice. If they are, then the standard would be met in every case. The group of notified employees is limited to rig operators, swab operators, swab hands, and other

employees, no matter their company-assigned title, who are employed in rig service operations in Wolf's North Dakota operations.

**Notice Period**

The next question is the time period to which the notice applies. The FLSA provides a general two-year statute of limitations for overtime pay violations, but if the violations are willful the period extends to three years. 29 U.S.C. § 255. The limitations period is not tolled with respect to other potential plaintiffs until they opt in to the case. 29 USC § 256; Parker v. Silverleaf Resorts, Inc., 2017 WL 1550522, *15 (N.D. Tex. 2017). Accordingly, it is appropriate to limit notice to workers who are employed by Wolf up to three years before notice is approved by the court. Ross, 2013 WL 1818331, *3 ("Courts in the Fifth Circuit have recognized that class certification is appropriately limited to workers employed by the defendant up to three years before notice is approved by the court."); Parker, 2017 WL 1550522, *15.

The notice in this case is limited to those employees who work for Wolf within the three years prior to the date notice is approved. Defendants also request an end date that coincides with the last date an original plaintiff was employed by Wolf, but the court is not persuaded that is appropriate. The employees in this case are few, so it is not likely there were many employed after these plaintiffs left the company, but they should be able to join and enforce their overtime rights if they were subjected to the same payment policy. Wolf also asks that the relevant time period end on October 27, 2016, the last day on which the

North Dakota operation was active. The notice need not include such a specification. If there were no employees after that date, it will not be an issue.

**Contact Information**

Plaintiffs seek contact information for the other employees so that notice may be provided. Defendants indicate they are willing to disclose names, addresses, and email addresses, but they ask that the court not require them to provide telephone numbers. There does not seem to be any significant burden on Wolf to provide that information, and it would have only a limited effect on the privacy of the employees who might be called. Given the often itinerant nature of oilfield workers, a telephone number (especially a cell phone number) may be the most reliable way to contact some of the employees. The numbers must be provided in this case.

**Form of Notice**

Plaintiffs have provided a form of notice that they wish to issue to the potential claimants. Defendants ask for the ability to meet and confer regarding the notice, and resolve any disputes before the court, before the notice is distributed. That is the ordinary practice of the court. Counsel are directed to begin conferring promptly to craft a notice consistent with this order and, within 14 days, file a motion for approval of the form of notice and any related forms. If there are any disagreements on the content of the forms, the motion should advise the court of those issues, and the court will set a method to resolve them.

Accordingly,

Plaintiffs' **Motion for Conditional Certification (Doc. 23) is granted**, and notice shall be issued to Wolf employees who were employed in any capacity performing rig services at its North Dakota operations within the three years prior to the court's final approval of the form of notice.

**IT IS ORDERED** that, within 14 days of this order, Defendants disclose to Plaintiffs' counsel the names, last known addresses, email addresses, phone numbers, and dates of employment of the potentially similarly situated employees within the scope of the notice.

**IT IS FURTHER ORDERED** that counsel promptly begin to confer about the final version of the notice and consent forms and, within 14 days, submit a motion for approval. The motion for approval should note any areas of disagreement that require resolution by the court.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 23rd day of January, 2018.

_____
Mark L. Hornsby
U.S. Magistrate Judge